ILLIANA MACHINE AND MANUFACTURING CORPORATION, Plaintiff-Appellee, v. DURO-CHROME CORPORATION, Defendant-Appellant.

First District (5th Division)    No. 85—3716

Opinion filed February 20, 1987.

Steven B. Nagler, of Stone, McGuire & Benjamin, of Chicago, for appellant.

Mathewson, Hamblet & Casey, of Chicago (Joseph D. Mathewson, Bruce T. Hopple, and Laura H. Morrill, of counsel), for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Plaintiff, Illiana Machine and Manufacturing Corporation (Illiana), sued defendant, Duro-Chrome Corporation (Duro-Chrome), for damages arising from a breach of contract for the alleged defective performance of chrome plating and polishing 20 steel retainers. Duro-Chrome denied that its work was defective and set forth two affirmative defenses: (1) Illiana is barred under the contract from as-

serting a claim since it did not notify Duro-Chrome of defects within a reasonable time; and (2) by accepting and paying for Duro-Chrome's services without claiming any defect, Illiana is now estopped from claiming damages. Furthermore, Duro-Chrome alleged at trial that Illiana failed to mitigate its damages. After a bench trial, the court found that it appeared that all parties agreed that the job had been improperly performed, resulting in a breach of contract. The court then determined that damages proved to result from that breach consisted of the original contract price and the cost of repairing the retainers and entered a verdict and judgment of $11,897.60 for Illiana. Duro-Chrome appealed the order and Illiana cross-appealed, asserting that the court erred by not including incidental damages, such as inspection and transportation costs, in the damage award. No questions are raised on the pleadings.

The issues on appeal are the propriety of including the original contract price in the damage award, whether Illiana reasonably attempted to mitigate its damages, and whether the trial court properly excluded incidental damages in determining the damages.

The record discloses that the parties contracted to have Duro-Chrome chrome plate and polish 20 retainers that Illiana had contracted to manufacture and deliver to its largest customer, United States Steel Corporation (U. S. Steel) in Gary, Indiana. The retainers were to be used as seals between roller bearings and shafts. To perform their function of keeping oil in the bearings, the retainers had to have a uniform surface. Illiana gave blueprint specifications to Duro-Chrome showing what portions were to be plated. The unplated retainers were delivered to Duro-Chrome in two shipments, on February 25 and March 3, 1981. Illiana requested Duro-Chrome to "rush" the project and made several telephone calls to remind Duro-Chrome of the job's urgency.

Illiana picked up three retainers on March 11 and nine more retainers on March 17. Illiana inspected the retainers between March 17 and March 20 and found that the plating did not conform to the specifications. Areas not to be plated had been plated and the thickness of the plating was not uniform and contained rough edges.

Illiana's sales manager and part-owner, Anthony Mattera, testified that after inspection of the 12 retainers, he called Ronald O'Shea, Duro-Chrome's general manager, to inform him of the problem. According to Mattera, O'Shea asked that U. S. Steel be permitted to make the final inspection. O'Shea denies the conversation took place. Illiana picked up the last eight retainers on March 20, and all 20 retainers were sent to U. S. Steel in late March. Subsequently, U. S.

Steel rejected the retainers and Illiana picked them up on April 27, 1981, notified Duro-Chrome of the rejection, and returned the retainers to Duro-Chrome on April 28. Duro-Chrome agreed to correct the defects at no extra charge, whereupon Illiana paid Duro-Chrome the contract price of $3,710 on April 29.

Thereafter, Illiana picked up five reworked retainers from Duro-Chrome on May 6, returning them on May 20 because of defects. On May 21, eight more reworked retainers were picked up from Duro-Chrome and sent to U. S. Steel on June 3 for inspection. After U. S. Steel rejected the reworked retainers, Mattera and O'Shea met with Bobby Wright of U. S. Steel, who explained the specifics of the defects. O'Shea agreed that Duro-Chrome could remedy the problem, and the retainers were returned to Duro-Chrome. O'Shea testified that he told Illiana that Duro-Chrome could strip and replate the retainers but Mattera replied that there wasn't time for that. O'Shea stated that, based on Mattera's statement, Duro-Chrome did nothing more. Mattera, however, testified that, on June 29, he sent a letter to O'Shea, outlining the chronology of the above events and requested Duro-Chrome to perform to specification, and further that Duro-Chrome would be considered responsible for repairs necessary to restore the retainers to a workable condition. Mattera stated that O'Shea then informed him that Duro-Chrome would do nothing more to the retainers.

During July, Illiana picked up 12 retainers in Duro-Chrome's possession and the remaining eight from U. S. Steel. Subsequently, on July 29, Illiana contracted with Emil Buck and Sons (Buck) to grind the excess chrome from the retainers. Pursuant to the contract with Buck, Illiana had to construct a special grinding fixture for Buck's use; the materials for the fixture were shown to cost $437.69 and an Illiana work order indicated the cost of fabrication by Illiana was $696.60. Illiana paid Buck $7,491 for the grinding, which was finished by September 15. The retainers were picked up on four separate occasions in August and September as they were repaired and then sent to U. S. Steel.

In support of its claim for incidental damages, Illiana submitted work orders and shipping invoices to supplement Mattera's testimony that the breach resulted in a cost of $2,144 for trucking expenses; $720 in shop time for inspecting, loading and unloading the retainers; and $1,600 in management time expended by Mattera. In response, Duro-Chrome contended that it could have stripped and replated the retainers for approximately $1,800 and would have required about 35 days to complete the job, at less cost and in less time than that required by Buck to correct the defects.

Thereafter, the trial court awarded Illiana $11,897.60, which amount consisted of the original contract price of $3,710, $7,491 paid to Buck to correct the defects, and $696.60 which was the cost of manufacturing the special fixture for Buck's use.

Duro-Chrome's first contention is that it was error to include the original contract price in the computation of damages. It is axiomatic that a reviewing court will not disturb a trial court's findings unless they are manifestly erroneous (*Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill. 2d 143, 149, 281 N.E.2d 323), and that maxim is applicable to an assessment of damages (*Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 278, 443 N.E.2d 569). Initially, we note that this case does not involve a sale of defective goods to which article 2 of the Uniform Commercial Code (U.C.C.) would be applicable. (Ill. Rev. Stat. 1981, ch. 26, par. 2—101 *et seq.*) The contract here was breached by the defective rendering of services. However, the general rule in contract actions is that damages are appropriate to place the aggrieved party in the position he would have been in had the contract been performed. (*Kalal v. Goldblatt Brothers, Inc.* (1977), 53 Ill. App. 3d 109, 112, 368 N.E.2d 671.) And, where the breached contract involved the furnishing of goods or services, the measure of damages for breach by defective performance is the cost of remedying the deficiencies. (53 Ill. App. 3d 109, 112, 368 N.E.2d 671.) Moreover, the damages awarded should not result in a windfall recovery for plaintiff. (53 Ill. App. 3d 109, 112, 368 N.E.2d 671.) In a case involving a defective performance of paperhanging, the court in *Harris v. Shuman* (1973), 11 Ill. App. 3d 894, 896, 298 N.E.2d 341, held that a damage award based on the contract price was improper since the correct measure should have been the cost of remedying the defects.

Applying these principles to the case at bar, it is apparent that it was error to include the original contract price in computation of Illiana's damages. Such inclusion operated to place Illiana in a better position than it would have been in absent the defective performance since the retainers were plated and polished by Duro-Chrome, even though the plating extended to areas that should not have been covered, thus rendering the retainers useless for their intended purpose. However, the retainers were not destroyed and could be remedied by removing the excess chrome, whereupon Illiana would receive the benefit of having had them plated and polished at no cost to it. For this reason, we find that the trial court improperly included the original contract price in the award of damages.

Duro-Chrome next contends that Illiana could have miti-

gated damages by allowing Duro-Chrome additional time to remedy the defects. Furthermore, Duro-Chrome asserts that Illiana failed to give adequate notice of the defects after receipt of the first shipment of retainers. In its answer to Illiana's complaint, Duro-Chrome raised two affirmative defenses: (1) a failure to notify it of Illiana's dissatisfaction with the chrome plating until April 18, 1981, which was after the date of delivery, thereby waiving any claim pursuant to the contract; and (2) Illiana was estopped from asserting a claim because of its acceptance of the retainers and payment therefor. However, Duro-Chrome did not affirmatively plead a defense of failure to mitigate. Such a plea is an affirmative defense which must be pleaded and proved by a defendant. (*Rosny v. Marnul* (1969), 43 Ill. 2d 54, 73, 250 N.E.2d 656.) Even if the issue had been pleaded, the evidence does not support a finding that Illiana failed to mitigate its damages. The record shows that Illiana did give Duro-Chrome time to correct the defects. However, Duro-Chrome failed a second time to conform the retainers to the specifications. Thereafter, in light of the fact that U. S. Steel was Illiana's largest customer and needed the retainers as soon as possible, Illiana acted in a commercially reasonable manner in contracting with Buck to correct the deficiencies.

Furthermore, the evidence discloses that 12 retainers were inspected between March 17 and March 20; three of these retainers were received by Illiana on March 11 and the other nine were received on March 17. A factual question then arose as to whether Duro-Chrome requested that U. S. Steel make the final determination as to the adequacy of the retainers. Although not expressly stated in the record, it appears that the trial court accepted Illiana's testimony that the parties agreed to allow the decision to be made by U. S. Steel. In any event, Duro-Chrome's subsequent conduct, by offering and attempting to correct the defects and even attending a meeting with Mattera and a U. S. Steel employee, acted as a waiver of strict compliance with the contract term that notice of a claim must be given within five days of receipt of the retainers. (See *Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 1017, 436 N.E.2d 598.) Accordingly, Duro-Chrome's claim of a failure to mitigate is without merit.

■■ Regarding the issue of incidental damages, it is true, as Duro-Chrome argues in its appellate brief, that Illiana's damages should be limited to the costs which Illiana established at trial were necessary to remedy the application of the excess chrome. Once a plaintiff shows that it was damaged by a breach, it then bears the burden of establishing a reasonable basis for computation of those damages.

(*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36.) Illiana contends that a reasonable basis was shown for the awarding of certain incidental damages, including expenses reasonably incurred in inspection, receipt, transportation, and other expenses reasonably incidental to the breach. Illiana directs our attention to such a provision in the U.C.C. (Ill. Rev. Stat. 1981, ch. 26, par. 2—715) as being analogous to the propriety of awarding incidental damages in this case.

■■ Illiana did exhibit work orders, receipts, and invoices to supplement Mattera's testimony estimating the hourly costs to the company. The record indicates that Illiana made 13 trips by truck between Illiana, Duro-Chrome, and U. S. Steel as a result of the defective workmanship which resulted in a loss of 67 hours and a cost of $2,144. However, on cross-examination, Mattera stated that Illiana made approximately one trip a week to U. S. Steel involving other business. Additionally, the costs of loading, unloading, and inspecting the retainers took 24 hours of shop time, for a total cost of $720. Mattera also testified that the breach resulted in the expending of 16 hours of management time by him at a total cost of $1,600. With the exception of the usual weekly trips to U. S. Steel, there was no factual evidence presented to show that these expenses were unreasonable. However, with no explanation, the trial court disallowed these expenses in its damage award.

■■ Although damages may not be awarded on the basis of conjecture and speculation (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 808, 443 N.E.2d 36), evidence such as that shown in this record has been held sufficient to allow compensation for additional labor and materials necessary to properly perform the previously contracted work. (See, *e.g., Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569; *Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36; *Marth v. Illinois Weather-Seal, Inc.* (1977), 50 Ill. App. 3d 577, 365 N.E.2d 588.) In the present case, the record demonstrates that at least some of the alleged incidental damages were adequately detailed and reasonably attributable to the breach. For these reasons, we must remand for reconsideration that portion of the trial court's decision that omitted the incidental damages discussed above. For the same reasons, we affirm the trial court's finding that the cost of manufacturing the fixture necessary for Buck's corrective work should be included in the damage award. However, the cost of materials for construction of the fixture should also have been included in the damages; such exclusion is against the manifest weight of the evidence.

In summary, we affirm the trial court's damage award in part (the inclusion of the contract price paid to Buck to remedy the defective retainers and the cost of manufacturing the special fixture); we reverse in part (the inclusion of the original contract price between Illiana and Duro-Chrome and the exclusion of the cost of the materials for construction of the special fixture); and remand the cause for entry of a judgment consistent with this opinion.

Affirmed in part; reversed in part; and remanded.

SULLIVAN, P.J., and PINCHAM, J., concur.