BRIAN PROPERTIES, INC., Plaintiff-Appellant, v. EDWARD T. BURLEY *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 1—94—1094

Opinion filed February 21, 1996.

Martin M. Ruken and Randall M. Lending, both of Vedder, Price, Kaufman & Kammholz, of Chicago, for appellant.

Michael K. Durkin, of Storino, Ramello & Durkin, of Rosemont, for appellees.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

The trial court granted defendant Edward T. Burley's (Burley's) motion to dismiss the complaint of plaintiff, Brian Properties, Inc. (Brian). On appeal Brian contends that the trial court erred when it

dismissed the complaint finding that the management agreement was a void agreement pursuant to section 19 of the Real Estate License Act of 1983 (225 ILCS 455/19 (West 1992)). We affirm.

Raymond Plote, who is not a party to this action, owned 100% of the beneficial interest in a land trust designated as the Harris Bank-Barrington, as trustee, under trust No. 113029 dated December 1, 1983. On August 1, 1987, Plote entered into an agreement titled management agreement (Agreement) with Brian. Brian, which is a licensed real estate broker, drafted the Agreement. The Agreement provided that Plote employed Brian as his exclusive agent to rent, lease, operate and manage the Schaumburg car-care center (Schaumburg Center), which was operated on the beneficial land trust. The Agreement in relevant part provided for its self-renewal annually unless either party provided written notice on or before 30 days prior to the expiration of a renewal period. Upon and after the termination of the Agreement, Plote would recognize Brian as the broker in any pending negotiations of the premises. The Agreement further provided for payment to Brian in the amount of 5% of gross receipts on a monthly basis for management services; $3 per square foot for initial lease up, thereafter 4% of gross term rental for new tenants and 2% of gross term rental for renewals for leasing services; and 6% of gross sales price for sale.

On April 19, 1989, Burley purchased from Plote 100% of the beneficial land trust. Although Burley did not execute any written agreement with Brian, Brian continued to manage the property. On July 21, 1992, Burley entered into a sales listing agreement for a 60-day period with Jae Sul, a licensed real estate broker, to act as Burley's agent for the sale of the Schaumburg Center. Later that month, Burley sold the Schaumburg Center for $1,730,000. Brian played no role in the sale of the property.

In November 1992, Burley notified Brian that its management duties would terminate on January 31, 1993. Upon learning of the sale, Brian requested but was not paid 6% of the gross sales price. In December 1992, Brian recorded a lien in the sum of $102,000 against the property pursuant to section 10 of the Commercial Real Estate Broker Lien Act (770 ILCS 15/10 (West 1992)). Brian then filed this action to foreclose its commercial broker's lien. Burley moved to dismiss the complaint. The trial court granted Burley's motion, finding that the Agreement constituted a listing agreement that did not contain a fixed termination date and was, therefore, void as a matter of law.

Brian contends on appeal that the trial court erred in finding that the Agreement is a listing agreement. Rather, Brian argues, the

Agreement, as its name indicates, is a "management" agreement. Brian further argues that even if this court were to find the section relating to leasing of the Agreement to be void, the section relating to sale of the property is not void. In support of this argument, Brian argues that the reason for giving Brian 6% of the gross sales price was to provide an incentive for making the property profitable and enhancing its value, and was not to compensate Brian for effecting a sale.

■ A listing contract is an agreement between a real estate broker and an owner of property in which the owner places the property with the broker who, in turn, in prospect for a commission, agrees to attempt to find a buyer or tenant for the owner. (*Leiter v. Fleetwood Realty Corp.* (1981), 95 Ill. App. 3d 212, 214, 419 N.E.2d 519, 521.) When a contract is drawn, it is construed against the drafter. (*Signal Capital Corp. v. Lake Shore National Bank* (1995), 273 Ill. App. 3d 761, 772, 652 N.E.2d 1364, 1371.) The terms and provisions of the listing agreement may not be construed in a manner that is contrary to the plain and obvious meaning of the language used. (*Bennet & Kahnweiler, Inc. v. American National Bank & Trust Co.* (1992), 235 Ill. App. 3d 896, 905, 601 N.E.2d 810, 816.) The Real Estate License Act requires that a listing contract provide for automatic expiration within a definite period of time. (225 ILCS 455/19 (West 1992).) Furthermore, no notice of termination at the expiration of that time period is required. (225 ILCS 455/19 (West 1992).) Any listing contract not containing a provision for automatic termination is void. (225 ILCS 455/19 (West 1992).) Section 19 of the Real Estate License Act was designed "to prevent an owner's land from stagnating indefinitely in one broker's hands on the market." *Edens View Realty & Investment, Inc. v. Heritage Enterprises, Inc.* (1980), 87 Ill. App. 3d 480, 484, 408 N.E.2d 1069, 1073; *Grayway Real Estate Corp. v. Dickey* (1988), 178 Ill. App. 3d 477, 479, 533 N.E.2d 100, 101.

■ Although the Agreement is titled "Management Agreement," this does not necessarily mean that the Agreement is merely a management agreement. (See *Leiter*, 95 Ill. App. 3d at 215, 419 N.E.2d at 521-22.) The Agreement was between Brian, a real estate broker, and an owner of property in which the owner placed the property with the broker which, in turn, in prospect for a commission, agreed to attempt to find a buyer or tenants for the owner. Therefore, as defined in *Leiter*, the Agreement is a listing contract.

Brian claims that the rationale behind section 19 of the Real Estate License Act, to prevent an owner's land from stagnating indefinitely in one broker's hands on the market, is not applicable because Brian never assumed any obligation to sell the property. The

rationale, however, applies whether the property is to be sold or leased. In this case, there existed the possibility that the property would stagnate on the market for over five years. Therefore, plaintiff's argument is meritless.

Although Brian claims that giving Brian 6% of the gross sales price was to provide an incentive for making the property profitable and enhancing its value, without placing any obligation on Brian to sell the property, this argument fails. The way the Agreement was written, Brian would receive 6% of the gross sales even if Brian decreased the value of the property. Furthermore, Brian would have received 6% of the gross sales, a sizable amount, whether Brian managed the property for only 18 months or for 30 years. Rather, after a reading of the plain language of the Agreement, we find that Brian was to get 6% of the gross sale because Brian would be the broker with the sales listing. The Agreement was a listing contract that contained no expiration date within a definite period of time. On the contrary, the Agreement was automatically extended annually and necessitated a written notice of termination. The Agreement, therefore, violated section 19 of the Real Estate License Act. We find that all portions of the Agreement that do not pertain to management of the property are void. Specifically, we find that section 4(d)(5) of the Agreement, which states, "For Sale 6% of gross price," is void.

Accordingly, for the reasons stated above, the order of the trial court is affirmed.

Affirmed.

TULLY and GREIMAN, JJ., concur.