In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1700

JIM LIAUTAUD, an individual
and JIMMY JOHN'S INCORPORATED,
an Illinois Corporation,

Plaintiffs-Appellants,

v.

MICHAEL LIAUTAUD, an individual,

Defendant-Appellee.

Appeal from the United States District Court
for the Central District of Illinois.
No. 95 C 2133--Harold A. Baker, Judge.

Argued January 12, 2000--Decided July 20, 2000

   Before POSNER, Chief Judge, and COFFEY and RIPPLE,
Circuit Judges.

   RIPPLE, Circuit Judge.  Jim Liautaud, upon
request, provided his cousin, Michael Liautaud,
with the secrets behind his successful sandwich
shop business. To protect himself, he proffered
to Michael a noncompetition agreement, which
prevented Michael from expanding his new business
beyond the Madison, Wisconsin, market. Michael
agreed to the terms of the agreement; however, he
later violated it by expanding his business into
other parts of Wisconsin. This lawsuit followed.

   Jurisdiction in this suit is based on diversity
of citizenship under 28 U.S.C. sec. 1332. The
amount in controversy exceeds $50,000,/1 and the
parties are of diverse citizenship./2 The
parties do not dispute that the applicable law is
Illinois state law. The district court granted
summary judgment for Michael and, for the reasons
set forth in this opinion, we affirm the judgment
of the district court.

I
BACKGROUND
A.  Facts

   Jim Liautaud owns and operates a chain of
gourmet submarine sandwich shops in Illinois

called Jimmy John's, Inc. He claims that the secret behind the success of his shops is a combination of his style of preparing the sandwiches and of his business strategies.

In 1988, Jim's cousin, Michael, approached Jim about opening his own submarine sandwich shop in Madison, Wisconsin. Jim agreed to provide Michael with his "secrets of success" so that Michael could open Big Mike's Super Subs. Pursuant to his offer to help, Jim sent Michael a letter outlining the agreement between the cousins. The letter states as follows:
I want to confirm at this time exactly what we agreed on so that it is clear and understood by both parties.

The agreement:

1. Mike will open up a sub shop in Madison using Jimmy John's products and systems.

2. Mike can open up as many shops [as] he would like in Madison only.

3. If you want to expand the sub/club business beyond Madison you will do so using Jimmy John's sub shops as a partner or franchisee. This is subject to 100% agreement on both parties. If you don't use Jimmy John's Inc. you will not expand the sub/club business beyond Madison.

4. You will not disclose to any one: recipes, products or systems that are given to you. (Except your managers who run your store).

I believe thats [sic] what we agreed on. If I have made any misrepresentations of our agreement please correct them in the margin of this letter and return a copy to me. If I don't receive a copy I'll assume this letter to be the agreement. R.1, Ex.A. Michael returned the letter to Jim and, in handwriting at the bottom, wrote: "Jimmy, If I agree on all items stated above, you must agree that you (Jimmy Johns Inc.) won't enter the Madison WI market." Id.

Jim then helped Michael open a sandwich shop in Madison. In 1991, Michael opened a sandwich shop outside Madison, in LaCrosse, Wisconsin, in violation of the cousins' agreement. Although the cousins attempted to reach a franchise agreement, it never materialized. Jim thereafter filed this action against Michael to enforce the terms of their agreement and for unjust enrichment.

B.  Holding of the District Court
1.

The district court held that the "agreement"

between the cousins constituted a "classic noncompetition covenant." R.65 at 3. For a noncompetition agreement to be valid under Illinois common law, the court explained, the covenant must be: (1) ancillary to a valid transaction or relationship and (2) reasonable in scope.

The court addressed first whether the covenant was ancillary to a valid transaction or relationship. Although the typical noncompetition agreement stems from an employment relationship or from the sale of a business, the court found that a valid relationship existed here because Jim intended the trade secrets to be a gift and Michael accepted them as such. The court stated that "[a] gift certainly creates a valid relationship imposing rights and obligations on both parties, just as do employment relationships and where money is paid for a business or some part of it." Id. at 5. Therefore, according to the court, the trade secrets that Jim provided to Michael were a gift and not for the mere sake of obtaining a covenant not to compete. Thus, the court concluded that the covenant not to compete was ancillary to the gift relationship.

Next, the court questioned whether the covenant not to compete was reasonable in its scope. The court explained that "[t]o be deemed reasonable, a noncompetition agreement must not be greater than necessary to protect the seller, oppressive to the buyer, or injurious to the public." Id. To be enforceable, the court clarified, the agreement must be reasonable in time, in geographical scope, and in the activities restricted. As the court noted, absolutely no durational or geographical limits [other than the restriction that Michael remain in Madison] existed on Jim's and Michael's noncompetition agreement. Also, according to the court, Jim had not explained why such stringent limitations were justified. Therefore, the court found that the covenant was unreasonable because it was overly restrictive and, thus, that it was void as against public policy.

2.

The district court also held that Jim was not entitled to restitution because of unjust enrichment. First, the court determined that Jim was not entitled to damages for unjust enrichment for Michael's use of Jim's trade secrets in his Madison shops because the trade secrets were a gift. Next, the court discussed the availability of damages for unjust enrichment for Michael's use of Jim's trade secrets outside of Madison. The court explained that unjust enrichment does not apply when an agreement is unenforceable

because it is illegal or contrary to public policy. Because it had concluded that the noncompetition agreement was void as against public policy, the court held that Jim could not receive damages for Michael's use of the trade secrets in his shops outside Madison, Wisconsin.

## II
## DISCUSSION
### A.  Standard of Review

We review a grant of summary judgment de novo and draw all reasonable inferences in favor of the nonmoving party. See Hill v. American Gen. Fin., Inc., No. 99-2682, 2000 WL 536670, *2 (7th Cir. May 4, 2000). "Under Illinois law, when the basic facts are not in dispute, the existence of a contract is a question of law." Echo, Inc. v. Whitson Co., 121 F.3d 1099, 1102 (7th Cir. 1997); accord Burgess v. J.C. Penney Life Ins. Co., 167 F.3d 1137, 1139 (7th Cir. 1999) (explaining that when the question on appeal is the interpretation of the terms of a contract, it is a question of law that is subject to plenary review). More specifically, "[t]he question of whether a restrictive covenant is enforceable or not is a question of law." Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc., 685 N.E.2d 434, 440 (Ill. App. Ct. 1997); accord Applied Micro, Inc. v. SJI Fulfillment, Inc., 941 F. Supp. 750, 753 (N.D. Ill. 1996).

"A contract is to be construed strictly against the drafter." Sharon Leasing, Inc. v. Phil Terese Transp., Ltd., 701 N.E.2d 1150, 1157 (Ill. App. Ct. 1998); see also Brian Properties, Inc. v. Burley, 662 N.E.2d 522, 524 (Ill. App. Ct. 1996); accord Advance Process Supply Co. v. Litton Indus. Credit Corp., 745 F.2d 1076, 1079 (7th Cir. 1984). Also, "[b]ecause Illinois courts abhor restraints on trade, restrictive covenants are carefully scrutinized." Prairie Eye Ctr., Ltd. v. Butler, 713 N.E.2d 610, 613 (Ill. App. Ct. 1999); see also Gillespie v. Carbondale & Marion Eye Ctrs., Ltd., 622 N.E.2d 1267, 1269 (Ill. App. Ct. 1993).

### B.  Validity of the Noncompetition Agreement
### 1.

Under Illinois law, "[a] 'naked' promise by one merchant not to compete against another merchant is against public policy because it injures the public and the promisor, while at the same time it serves no protectible interest of the promisee." Abel v. Fox, 654 N.E.2d 591, 596 (Ill. App. Ct. 1995). In order for a noncompetition agreement to be valid, therefore, it must be ancillary to a valid transaction, such that the

covenant not to compete is subordinate to the main purpose of the transaction. See id. at 593. Although noncompetition agreements typically stem from an employment relationship or from the sale of a business, another valid transaction may support a covenant not to compete. The Supreme Court of Illinois has stated that a valid restraint on trade may be based on a purchase or sale of a business or "any other analogous circumstance giving one party a just right to be protected against competition from the other." More v. Bennett, 29 N.E. 888, 891 (Ill. 1892).

Although Jim urges that we characterize the transaction as a franchise agreement, we believe that the arrangement is more accurately characterized as a gift. "A gift is a voluntary gratuitous transfer of property from donor to donee where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." In re Estate of Poliquin, 617 N.E.2d 40, 42 (Ill. App. Ct. 1993). We believe that there is no question that Jim intended to provide Michael with the gift of the "secrets of his success." Also, the parties do not dispute that Jim delivered his gift to Michael and that Michael accepted Jim's gift. Thus, the parties entered a valid gift relationship. The donor in a gift relationship, when the gift is trade secrets, is providing the donee with valuable advice for free. The donor may wish to protect both his generosity and his business interests from exploitation; therefore, he may desire to impose a covenant not to compete on his donee. See More, 29 N.E. at 891. Here, the covenant not to compete was ancillary to the gift transaction between Jim and Michael: The gift from Jim to Michael was the essential element of the transaction, and the noncompetition agreement was subordinate to the main purpose of that transaction. Thus, because the gift relationship is a valid relationship or transaction and the noncompetition agreement is subordinate to that relationship, the noncompetition agreement meets the first requirement that it be ancillary to a valid relationship or transaction.

2.

The next question is whether the scope of the noncompetition agreement is reasonable, a determination which is based on the facts and circumstances of the particular case. See Eichmann v. National Hosp. & Health Care Servs., Inc., 719 N.E.2d 1141, 1143 (Ill. App. Ct. 1999); Lawrence & Allen, 685 N.E.2d at 441; Weitekamp v. Lane, 620 N.E.2d 454, 462 (Ill. App. Ct. 1993). For this restrictive covenant to be reasonable, its terms (1) must not be greater than necessary to protect Jim, (2) must not be oppressive to

Michael, and (3) must not be injurious to the general public. See Decker, Berta & Co. v. Berta, 587 N.E.2d 72, 76 (Ill. App. Ct. 1992); see also Lawrence & Allen, 685 N.E.2d at 441; Abel, 654 N.E.2d at 593; Weitekamp, 620 N.E.2d at 462; Howard Johnson & Co. v. Feinstein, 609 N.E.2d 930, 934 (Ill. App. Ct. 1993); accord Applied Micro, 941 F. Supp. at 753.

Jim asserts first that, given the nature of his business and the trade secrets involved, the restraint on Michael's expansion was necessary to protect his business interests. He explains that his trade secrets are the fundamental elements of his business success and that providing Michael with access to these secrets, without compensation for Jim, is fundamentally unfair. Next, Jim argues that the restrictions were not oppressive to Michael because (1) he provided the trade secrets to Michael for free, (2) Michael could expand outside Madison in any business other than the submarine sandwich business, and (3) Michael could expand his submarine sandwich business outside Madison, as long as he used Jimmy John's, Inc. as a partner. Finally, Jim asserts that not enforcing the covenant would be injurious to the public because it would restrict the freedom of parties to contract.

Conversely, Michael submits that the noncompetition agreement was unreasonable. According to Michael, Jim does not have a legitimate business interest in preventing Michael from establishing submarine sandwich shops where Jim is not located. Also, the geographical restriction is not reasonable, Michael claims, because the restriction prevents Michael from expanding anywhere in the world besides Madison, Wisconsin.

In our view, under Illinois common law principles, the covenant here is overly broad because there is an unnecessarily stringent geographic restriction on the promisor, Michael, and no temporal restriction whatsoever. These restrictions are not necessary to protect Jim's business interest, are oppressive to Michael, and are injurious to the public. Generally, in a covenant not to compete, the agreement restricts competition within a certain town or city or within a defined radius from the promisee's own business. See, e.g., Prairie Eye Ctr., 713 N.E.2d at 612 (upholding an agreement which restricted the promisor from competing within specified cities as well as within a 10-mile radius from certain other cities); Gillespie, 622 N.E.2d at 1270 (enforcing a 50-mile radius restriction on competition with a medical practice); Weitekamp, 620 N.E.2d at 462 (allowing an agreement with a 300-mile radius limit); Decker, Berta & Co., 587

N.E.2d at 76 (sanctioning a covenant with a 35-mile radius restriction). Although a lack of geographic limits is not per se unreasonable, the complete bar on competition needs to be reasonably related to the promisee's interest in protecting his own business. See Eichmann, 710 N.E.2d at 1147; Lawrence & Allen, 685 N.E.2d at 441.

Here, Michael is prevented from expanding anywhere in the world outside of Madison. Although this may seem to be an exaggeration of what the parties expected in reality, we can only read the plain language of the agreement, and in its terms the covenant not to compete does not contain any geographic limitations. Jim's articulated legitimate business interest, protection of his trade secrets, does not show why Michael should not be able to expand to locations other than Madison, even when Jim is not in those locations. Jim has not indicated that he plans to expand into the markets where Michael is located. Also, Michael has not suggested that he plans to expand to places where Jim already is located. Generally, courts will uphold a restriction on competition that is coextensive with the area where the promisee is doing business. See Lawrence & Allen, 685 N.E.2d at 442. Jim has not demonstrated why expansion by Michael in cities and states where Jim is not located would injure Jim.

Moreover, the agreement is oppressive to Michael because it restricts him from expanding his sandwich business, regardless of whether he continues to use Jim's trade secrets. According to the terms of the agreement, Michael could not open any kind of sandwich shop outside Madison without Jim's approval. Finally, the complete ban on expansion is injurious to the public because it completely restricts competition. Although it seems "fair" that Jim should receive some compensation for Michael's use of Jim's trade secrets, this noncompetition agreement, without any geographic limitations, is not the reasonable means of accomplishing that end.

The agreement also fails to provide any limits on time. Instead, the agreement, as written, merely states that Michael may not expand his business. Read literally, this means that Michael may not expand his business beyond Madison for the rest of his life. Illinois courts generally have refused to enforce noncompetition agreements that do not limit the duration of the restriction. See Eichmann, 719 N.E.2d at 1148; but see Storer v. Brock, 184 N.E. 868 (Ill. 1933) (allowing an activity restriction for all time within Chicago on retired physician because physician received valuable consideration for

contract and could practice anywhere outside the city). The length of time for the restriction must be reasonably related to the needs of the promisee's business. See Eichmann, 719 N.E.2d at 1148; Lawrence & Allen, 685 N.E.2d at 442. For example, in a business where client development takes over a year, a restriction on competition for one to two years is reasonable because of the time it takes to cultivate a client. See, e.g., Prairie Eye Ctr., 713 N.E.2d at 612 (upholding a two-year restriction because of the time needed to cultivate patients); Gillespie, 622 N.E.2d at 1270 (enforcing a two-year restriction on competition with a medical practice).

Jim has not produced any reason for perpetually restricting Michael's ability to expand beyond Madison. Even though it may take time to establish a sandwich shop business and to attract a sufficient customer base to make the venture profitable, the time to accomplish this is not in perpetuity. Jim has not shown that he needs to prevent Michael from ever expanding beyond Madison in order to protect his business interests. Also, as stated above, under the agreement, Michael is prevented from ever expanding his shops, even if he develops his own recipes and business strategies. Finally, this infinite agreement injures the public because it stifles competition. We conclude that, in light of the severe and unnecessary restrictions on Michael, this covenant not to compete is unreasonable and is, therefore, void as against public policy.

C.  Unjust Enrichment

Jim also asserts that he has a claim of unjust enrichment against Michael for the use of his trade secrets in (1) Michael's Madison shops and (2) Michael's shops outside of Madison. However, the district court correctly held that a party may not recover damages for unjust enrichment pursuant to a gift relationship. See generally Hartman v. Townsend, 523 N.E.2d 199, 202-03 (Ill. App. Ct. 1988). Thus, Jim may not recover damages for Michael's use of the trade secrets in his Madison shops.

We also agree with the district court that Illinois law does not allow a claim for unjust enrichment when the underlying contract has been held to be void as against public policy. See First Nat'l Bank v. Malpractice Research, Inc., 688 N.E.2d 1179, 1186 (Ill. 1997); see also Juneau Academy v. Chicago Bd. of Educ., 461 N.E.2d 597, 601 (Ill. App. Ct. 1984). Because the noncompetition agreement is void as against public policy, we cannot award Jim damages for unjust enrichment under it. Thus, Jim cannot

receive damages for Michael's use of his trade secrets in Michael's Madison shops or in his shops outside Madison.

Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED

/1 The amount in controversy under 28 U.S.C. sec. 1332, since Jim filed his lawsuit, has changed from in excess of $50,000 to in excess of $75,000. This amendment does not apply retroactively.

/2 Jim is a citizen of Illinois, and Jimmy John's, Inc. is incorporated in Illinois with its principal place of business in Illinois. Michael is a citizen of Wisconsin.