FIRST DIVISION

October 18, 1999

No. 1-98-3593

IN THE APPELLATE COURT

OF ILLINOIS

FIRST JUDICIAL DISTRICT

JOHN EICHMANN,

Plaintiff-Appellee,

v.

NATIONAL HOSPITAL AND HEALTH CARE SERVICES, INC.,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

No. 97 CH 13460

Honorable

John K. Madden,

Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff, John Eichmann, filed a verified complaint against defendant, National Hospital and Health Care Services, Inc.  Count I sought a declaration that restrictive covenants contained in an independent contractor agreement between plaintiff and defendant are unenforceable.  Count II sought damages for breach of that agreement.  The circuit court granted summary judgment in favor of plaintiff as to count I and subsequently denied defendant's motion for reconsideration.  Defendant filed a timely notice of appeal.  This court has jurisdiction of this appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).  For the reasons stated below, we affirm the trial court's judgment.

Our review of the trial court's grant of summary judgment is 
de novo
. 
In re Estate of Hoover, 
155 Ill. 2d 402, 615 N.E.2d 736 
(1993)
).
  The reasonableness of a restrictive covenant is a question of law.
 Corroon & Black of Illinois, Inc. v. Magner
, 145 Ill. App. 3d 151, 162, 494 N.E.2d 785 (1986); 
Hamer Holding Group, Inc. v. Elmore
, 244 Ill. App. 3d 1069,
 1078
, 613 N.E.2d 1190 (1993);
 Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.
, 292 Ill. App. 3d 131, 137, 685 N.E.2d 434, 440 (1997).  Although the question of whether a restrictive covenant is enforceable is one of law and depends upon the reasonableness of its terms, the determination of reasonableness necessarily depends on the unique facts and circumstances of each case.
 Hamer Holding Group, Inc. v. Elmore
, 202 Ill. App. 3d 994, 1009, 560 N.E.2d 907, 917 (1990); 
McRand, Inc., v. Van Beelen
, 138 Ill. App. 3d 1045, 486 N.E.2d 1306 (1985).  The relevant undisputed facts and circumstances of this case follow.

Defendant markets and sells group health and life insurance products to small industrial and commercial employers.  Plaintiff was employed by defendant from January 9, 1992, through October 31, 1994, as an insurance sales account executive.  Plaintiff voluntarily resigned in October 1994.  In January 1995, plaintiff began working as an independent contractor for defendant.  As an independent contractor, plaintiff performed the same duties he had as an employee. On September 5, 1995, the parties executed a written agreement (the Agreement) which among other things identified the 32 customers, hereinafter referred to as "Exhibit B customers," that plaintiff was to serve as an independent contractor.  The Agreement also contained, under separate headings, the two restrictive covenants
(footnote: 1) that are now the subject of this appeal.

The first of the two restrictive covenants at issue states as follows:

"8. Ownership of Business.

***

b. Eichmann hereby covenants and agrees not to compete, directly or indirectly, with any existing or future customer of NHC.  This covenant shall apply to all lines of insurance coverage from and after the date of execution of this Agreement.  Notwithstanding this covenant, the parties shall not be precluded from competing with each other for new customers as to which said customers are not clients of NHC."

The other covenant states in pertinent part:

“17. Covenant Not to Compete.  The parties hereto acknowledge that this Agreement is based on the premise that this covenant not to compete is essential and fully upheld as follows:

***

d. Eichmann hereby agrees not to directly or indirectly, solicit, accept, service or contact for the purposes of soliciting any insurance product(s), any customer either group or individual insured through NHC.  Each party agrees that his/its obligations under this Agreement shall continue for so long as NHC and/or Eichmann continue to service an Exhibit B customer."

Under the same paragraph 17 is another clause which states as follows:

“e. If any portion of the foregoing provisions 
of this covenant not to compete
 shall be, for any reason, declared invalid or unenforceable, the remaining portion or portions shall nevertheless be valid and enforceable and carried into effect to the fullest extent permitted, and the invalid or unenforceable portion shall be reformed, if possible, so as to be valid and enforceable."  

This clause, applicable to paragraph 17, is not applicable to paragraph 8(b).

On June 5, 1998, the trial court granted partial summary judgment to plaintiff, concluding that the restrictive covenants are unreasonable as a matter of law.  On August 21, 1998, the court denied defendant's motion for reconsideration.

Defendant raises several issues on appeal, which we shall address as follows: (1) the trial court erred in granting equitable relief because plaintiff had "unclean hands”; (2) the trial court improperly applied the standard for employee-employer relationships where, at the time of the Agreement, plaintiff was an independent contractor; (3) the trial court erred in determining that the provisions in question are unreasonable and unenforceable; and (4) the trial court erred in refusing to modify the Agreement, which was contrary to the both the terms of the Agreement and case law.  Defendant also contends that summary judgment should not have been granted because several issues of fact exist.  We shall address each purported genuine issue of material fact under our discussion of each issue to which defendant contends it applies.

Defendant asserts that summary judgment should not have been granted by a court of equity to plaintiff since he breached the Agreement, and therefore, had "unclean hands."  The equitable doctrine of unclean hands provides that a party seeking equitable relief cannot take advantage of his own wrong. 
Northern Trust Co. v. VIII South Michigan Associates,
 276 Ill. App. 3d 355, 368, 657 N.E.2d 1095, 1105 (1995).  It is within the sound discretion of the trial court whether to apply the doctrine of unclean hands. 
Regional Transportation Authority v. Burlington Northern Inc.
, 100 Ill. App. 3d 779, 786, 426 N.E.2d 1143, 1148 (1981).  It is plaintiff, not defendant, who instituted this action asking the court to determine the parties' obligations under the Agreement.  Defendant essentially asks us to hold that a party who believes that a contract is invalid and seeks a declaratory judgment as to its invalidity must nonetheless comply with the contract, regardless of any harm it may cause to the party, while that party awaits the outcome of its declaratory judgment.  We refuse to do so.

In refusing to recognize a tort action for breach of contract, this court has stated: "The law does not condone breach of contract, but it does not consider it tortious or wrongful.  If a party desires to breach a contract, he may do so purposely as long as he is willing to put the other party in the position he would have been had the contract been fully performed. [Citation.] Fault is irrelevant to breach of contract." 
Album Graphics, Inc. v. Beatrice Foods Co.
, 87 Ill. App. 3d 338, 350, 408 N.E.2d 1041, 1050 (1980).  This principle is equally applicable here.  Had the court determined that the contract was valid and enforceable, defendant would be entitled to be put in the position he would have been in had the breach not occurred.  Plaintiff has brought this action in accordance with his apparent good-faith belief that the covenants are unenforceable as a matter of law.  Defendant has failed to show that plaintiff acted with malice or in bad faith, and plaintiff is not barred by the doctrine of unclean hands from bringing this action.

Defendant next argues that the trial court erred in applying the standards applicable to restrictive covenants in employment contracts, rather than that applied to cases involving sales of businesses, partnerships and other business agreements.  Defendant notes that, at the time of the Agreement, plaintiff was an independent contractor and attempts to characterize the parties' relationship as a joint venture.  Defendant argues that plaintiff, as an independent contractor, had more bargaining strength than an employee and the restrictive covenants therefore need not be subject to the strict scrutiny given to typical postemployment restraints.  Defendant argues that the trial court, in not considering plaintiff's relative bargaining strength, improperly applied the standard for employee-employer relationships.  Defendant therefore contends that a genuine issue of material fact precluded summary judgment because plaintiff's relative bargaining strength was a contested fact.  We disagree.

While it is true that restrictive covenants in employment contracts are looked at with more scrutiny than such covenants that are ancillary to the sale of a business, in both instances, the restraints must be reasonable.  
As this court has noted, although Illinois law views restrictive covenants ancillary to a sale of a business more favorably than those ancillary to employment, restrictive covenants in general impair the availability of services and interfere with competition; therefore, our courts apply scrutiny, 
with equal fervor, to both types of restraints.
 Hamer Holding Group, Inc. v. Elmore, 
244 Ill. App. 3d 1069, 1079, 613 N.E.2d 1190, 1197-98 (1993).  Defendant has not cited any case that stands for the proposition that there are defined, separate standards for each type of restrictive covenant.

Although one of the reasons courts distinguish the two types of restrictive covenants is that a purchaser in the sale of a business context holds more bargaining power than an ordinary employee in an employment context (
Springfield Rare Coin Galleries, Inc. v. Mileham
, 250 Ill. App. 3d 922, 939, 620 N.E.2d 479, 491 (1993)), another consideration is that the nature of the interest is different. See, 
e.g.
, 
Hamer Holding Group, Inc. v. Elmore
, 202 Ill. App. 3d 994, 1007, 560 N.E.2d 907, 916 (1990)(Illinois courts have historically distinguished between the two types of covenants, based on the unique interest that each seeks to protect).  In the sale of a business, the interest to be protected is the goodwill that is transferred.
  House of Vision, Inc. v. Hiyane
, 37 Ill. 2d 32, 37, 225 N.E.2d 21, 24 (1967);
 Hydroaire, Inc. v. Sager
, 98 Ill. App. 3d 758, 767, 424 N.E.2d 719, 726 (1981)(purchaser of business entitled to protection against former owner's appropriation of goodwill purchased with business). 
 The interest of an employer, on the other hand, has been described as that of "retaining its present customers in circumstances where the employee's contacts and relationships with those customers engenders a substantial risk that the employee will be enabled to divert part of or all the employer's business to the employee's self-interest. [Citation.]" 
Agrimerica, Inc. v. Mathes
, 199 Ill. App. 3d 435, 443, 557 N.E.2d 357, 363 (1990).  

While it is true that the parties were no longer in an employer-employee relationship at the time of the Agreement, no business was sold and no transfer of goodwill was involved.  The Agreement here is more analogous to an employment contract than it is to a sale of a business.  Any interest defendant sought to protect by these covenants would have been to prevent his customers from being taken over by plaintiff as a result of his contacts during his employment period and subsequent independent contractor relationship.

Plaintiff's bargaining strength, even if disputed, is not a genuine issue of 
material
 fact.  Plaintiff's status as an independent contractor does not change the nature of defendant's interest.  Illinois law does not hold restrictive covenants contained in an independent contractor agreement to a less strict standard than those in employment contracts. 
Bankcard America, Inc. v. American Timeshare Associates, Inc.
, No. 93 C 6362, (N.D. Ill., August 29, 1994).  Thus, neither plaintiff's status as an independent contractor nor any alleged increased bargaining strength on his part created a genuine issue of material fact. 

We next address whether the restrictive covenants are unreasonable as a matter of law.  With respect to this issue, we conclude that there are no genuine issues of material fact.  Defendant contends that the court should have determined whether defendant had a protectible interest in its customers, but the requirement that a restrictive covenant be reasonable is a requirement that is distinct from, and in addition to, the requirement that there first be a protectible interest.  Here, there are no genuine issues of material fact with respect to the scope of the restrictive covenants in question.  Thus, even if we were to 
assume
 that defendant has a protectible legitimate business interest that would justify a restrictive covenant, we can nevertheless consider whether, as a matter of law, the covenants here are reasonable or whether they are clearly greater than necessary to protect any such interest of defendant.

The restrictive covenants here are both temporally and geographically unlimited.  In order to accurately evaluate the lack of the geographical and temporal restrictions, it is first necessary to identify and explain the type of restrictive covenants with which we are dealing.   Unlike the typical covenant not to compete, neither of the restrictive covenants here constitutes a blanket prohibition on competition in that plaintiff is not precluded from competing with defendant "for new customers as to which said customers are not clients of [defendant]."  The restrictive covenants at issue here, rather than prohibiting all competition within a particular geographical area, are limited to a particular type of activity, such as solicitation, or are limited to a specific customer group.  Both paragraph 8(b) and paragraph 17(d) of the Agreement purport to limit plaintiff's activities to a customer base.  Paragraph 17(d) of the Agreement further purports to limit the type of activities in which plaintiff can engage.  Thus, both contain what has been termed an "activity restraint." See H. Blake, 
Employee Agreements Not to Compete
, 73 Harv. L. Rev. 625, 675-77 (1960).

The distinction between a blanket prohibition on competition and an activity restraint is important because the lack of a geographical restriction does not 
automatically
 invalidate a postemployment restraint where the geographical prohibition is qualified by an activity restraint. 
Corroon & Black of Illinois, Inc. v. Magner
, 145 Ill. App. 3d 151, 165, 494 N.E.2d 785 (1986); 
Dryvit System, Inc. v. Rushing,
 132 Ill. App. 3d 9, 13, 477 N.E.2d 35, 38 (1985); 
Morrison Metalweld Process Corp. v. Valent
, 97 Ill. App. 3d 373, 379, 422 N.E.2d 1034 (1981).  Covenants containing no geographic limitation have been upheld as reasonable where the purpose of the restriction was to protect the employer from losing customers to a former employee who, by virtue of his employment, gained special knowledge and familiarity with the customers' requirements. See, 
e.g.
, 
Wolf & Co. v. Waldron
, 51 Ill. App. 3d 239, 366 N.E.2d 603 (1977)(no geographic limitation but, since employee was only restrained from contacting former clients, geographic location would serve no purpose).  Thus, the lack of a geographic limitation here is not 
per se
 unreasonable.

Nevertheless, although not necessarily required to be geographically limited, an activity restraint must be reasonably related to the employer's interest in protecting customer relations that its employees developed as a direct result of the employment. 
Arpac Corp. v. Murray
, 226 Ill. App. 3d 65, 75-76, 589 N.E.2d 640, 649 (1992).  Courts are hesitant to enforce noncompetition agreements that prohibit employees from soliciting or servicing not only customers with whom they had direct contact, but also customers they never solicited or had contact with while employed.
 Corroon & Black of Illinois, Inc. v. Magner
, 145 Ill. App. 3d at 165, 494 N.E.2d at 793 (1986); 
 McRand, Inc. v. van Beelen
, 138 Ill. App. 3d 1045, 1057, 486 N.E.2d 1306, 1315 (1985); 
Jefco Laboratories, Inc. v. Carroo
, 136 Ill. App. 3d 793, 798-99, 483 N.E.2d 999, 1003 (1985).  "Courts uphold only those noncompetition agreements which protect the employer's legitimate proprietary interests and not those whose effect is to prevent competition 
per se
. [Citation]." 
Abbott-Interfast Corp. v. Harkabus
, 
250 Ill. App. 3d 13, 17, 619 N.E.2d 1337, 1341 (1993).  Indiana law appears to be in accord on this particular issue, and our research has disclosed a case
, Seach v. Richards
, 
Dieterle & Co.
, 439 N.E.2d 208 (Ind. App. 1982), which contains the following statement that we find helpful here:

"[A] claim that lack of a geographic limitation automatically voids the contract would seem overly simplistic if the impermissible actions of the employee are more clearly limited by other means.  It has been held that 
as the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases
." 
(Emphasis added.)
 Seach v. Richards
, 
Dieterle & Co.
, 439 N.E.2d 208, 213 (Ind. App. 1982).

Therefore, where an activity restraint, such as a covenant not to solicit, lacks 
both
 a geographic limitation and any qualifying language concerning the particular customers to which it applies, it is unreasonable.
 Lawrence and Allen
, 292 Ill. App. 3d at 139, 685 N.E.2d at 441.

Although the Agreement here 
purports
 to limit plaintiff's impermissible actions to a class of person, the class is not specific enough to be reasonable.  Competition is prohibited with "any existing or future customer" and soliciting, accepting, servicing and contacting is prohibited with "any customer."  This language thus includes any customer, 
regardless
 of whether plaintiff developed a relationship with that customer during his period of working for defendant, either as an employee or independent contractor.  Defendant admits it has a total of approximately 800 customers, but it is undisputed that plaintiff dealt with only 32 of defendant's customers, the so-called "Exhibit B customers."  Defendant correctly concedes that "the focus of the bargain made by Eichmann and NHC was the Exhibit B customer base."  Yet, Exhibit B customers, which are referred to elsewhere in the Agreement, are notably absent from the restrictive covenants.  Although defendant now contends that "NHC seeks to prohibit Eichmann 
only
 from soliciting the NHC customers he serviced" and that the restrictive covenants of paragraphs 8(b) and 17(d) of the Agreement "are intended to protect and safeguard NHC's business with its Exhibit B customer base," this is clearly a misinterpretation of the Agreement.  In addition to all of defendant's present customers, plaintiff is prohibited from ever competing with defendant, even for future customers.  As a matter of law, defendant cannot have a protectible interest in future customers who do not yet exist.  This clearly is an attempt on the part of defendant to prevent competition 
per se
 by plaintiff.

In addition to the overbreadth of the customer base to whom the restrictive covenants apply, the covenants are temporally unlimited.  Time restrictions within restrictive covenants must also be reasonable, corresponding to the time the employer needs to acquire customers. 
Midwest Television, Inc. v. Oloffson
, 298 Ill. App. 3d 548, 557, 699 N.E.2d 230, 235 (1998); see also 
Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.
, 292 Ill. App. 3d 131, 139-40, 685 N.E.2d 434, 442 (1997).  Defendant concedes that the Agreement contains no specific time limitation, but alternatively contends that the restrictions are temporally limited by (1) the length of time defendant continues to service the customers listed in exhibit B or (2) plaintiff's life.  Neither of these purported limitations constitutes a valid temporal restraint as each is of an indefinite and unspecific duration.  Even assuming defendant has a legitimate protectible interest in its customers, we have determined that, under the particular undisputed facts and circumstances of this case, the scope of the covenants here are greater than necessary to protect that interest.  Thus, we agree with the trial court's decision that the restrictive covenants here are unreasonable as a matter of law, due to the lack of a temporal restraint and the overbroad scope of customers to which each pertains.

Having determined that the restrictive covenants at issue are unreasonable, we turn to defendant's argument that the trial court erred in refusing, contrary to the both the terms of the Agreement and case law, to modify the Agreement. In denying defendant's motion for reconsideration, the trial court stated as follows:

"While recognizing that the Court is permitted to make slight modifications to effectuate the intent of the parties, the Agreement is not limited in any way in scope or duration and, therefore, the Court would not be making slight modifications to an agreement but essentially fashioning a new agreement.  The Court is not in a position nor is it this Court's intent to make such drastic modifications."

We conclude that the trial court was correct.  Although "[a] court will neither add language or matters to a contract about which the instrument itself is silent, nor add words or terms to an agreement to change the plain meaning of the parties as expressed in the agreement,” “a court may modify the restraints embodied in a covenant not to compete.  [Citation].”  
Sheehy v. Sheehy
, 299 Ill. App. 3d 996, 1001, 702 N.E.2d 200, 204 (1998).  However, as our supreme court has pronounced "[w]hile we do not hold that a court of equity may never modify the restraints embodied in a contract of this type and enforce them as modified, 
the fairness of the restraint initially imposed
 is a relevant consideration to a court of equity."  (Emphasis added) 
House of Vision, Inc. v. Hiyane
, 37 Ill. 2d 32, 39, 225 N.E.2d 21, 25 (1967).

We believe that a determination of whether an original restraint is unfair can be made based upon the 
degree
 of unreasonableness of the original restraint.  This is borne out by the 
House of Vision
 decision itself.  While, as we have noted earlier, the restrictive covenant there contained a blanket prohibition on competition in a particular geographic area, concepts of fairness are equally applicable to activity restraints.  Thus, we can take guidance from not only our supreme court's words, but also its actions in 
House of Vision
.  There, the court reversed the lower court's decision which had modified the terms of the original restraint.  This action clearly was based on the court's implicit determination that the original restraint was unfair; unfair because of its overbreadth.   A restrictive covenant is unfair where its terms "clearly extend far beyond those necessary to the protection of any legitimate interest” of the employer or, in other words, amount to “unrealistic boundaries in time and space.”  
House of Vision
, 37 Ill. 2d at 39, 225 N.E.2d at 25.

While the particular facts and circumstances differ here, this underlying principle remains the same. Subsequent to the 
House of Vision
 decision, courts have declined requests to make modifications in postemployment restrictive covenants that had significant deficiencies. See, 
e.g.
, 
Lawrence & Allen, Inc. v. Cambridge Human Resource Group, Inc.,
 292 Ill. App. 3d 131, 141, 685 N.E.2d 434, 443 (1997)
; Lee/O'Keefe Insurance Agency, Inc. v. Ferega,
 163 Ill. App. 3d 997, 1006-07, 516 N.E.2d 1313 (1987) (finding a modification of the contract would have been tantamount to drafting a new contract).  Thus, while Illinois law allows a court to modify a restrictive covenant, and even where the parties have incorporated this principle into their agreement through the use of express language allowing modification,  a court should refuse to modify an unreasonable restrictive covenant, not merely because it is unreasonable, but where the 
degree
 of unreasonableness renders it unfair.  Due to the significant deficiencies of the restrictive covenants here, drastic modifications, rather than minor ones, would be necessary and that would be tantamount to fashioning a new agreement.  More importantly, modification "could have the potential effect of discouraging the narrow and precise draftsmanship which should be reflected in written agreements.
"  Lee/O'Keefe Insurance Agency, Inc. v. Ferega,
 163 Ill. App. 3d at 1007, 516 N.E.2d at 1319.  We agree with the trial court's decision to decline defendant's request for modification of the restrictive covenants, particularly where, as here, the original restraint was unfair in that its degree of unreasonableness was great and clearly designed to protect defendant from competition 
per se
 on the part of plaintiff.

In accordance with the foregoing, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O’MARA FROSSARD, P.J., and RAKOWSKI, J., concur.

FOOTNOTES
1:
The restrictive covenant contained in paragraph 17(d), although included under the heading “Covenant Not to Compete,” more closely resembles what is known as a nonsolicitation agreement, but also has attributes of noncompetition agreements since it further prohibits plaintiff from servicing or accepting any of defendant's customers, presumably those who contact plaintiff of their own accord.  The restrictive covenant contained in paragraph 8(b), however, does contain language typically included in covenants not to compete, but is contained under the heading “Ownership of Business.”  Thus, as drafted, these particular provisions do not fit precisely under the categories generally discussed in Illinois cases.  To avoid any misinterpretation of our decision, we shall refer to each provision by its paragraph number, rather than the labels.