In the

# United States Court of Appeals
### For the Seventh Circuit

No. 01-4000

RANDELL L.D. SMITH,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 00-1122—**Michael M. Mihm**, *Judge.*

SUBMITTED APRIL 22, 2002*—DECIDED JUNE 12, 2002

Before FAIRCHILD, ROVNER, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.* Perched atop an M60-A3 tank parked on his farm, Randell L.D. Smith struck a proud pose as a newspaper reporter snapped his picture. At the age of 76, Smith was a bit of a fixture in the local news in Bloomington, Illinois. After he acquired the tank from the U.S. Army—one that once roared across the hot desert sands of Iraq during the Persian Gulf War—the Bloomington paper

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

published several articles (with pictures), reporting that Smith had refurbished the tank for display on his farm. Passersby could see it from the street. In Bloomington it seemed that everyone knew about Smith and his tank. But the Army had no idea what was going on—it thought the local V.F.W. post had the tank. When the Army eventually discovered that Smith had the tank (a year after the Bloomington paper reported as much), government agents and the Illinois National Guard promptly repossessed it.

Unhappy with this turn of events, Smith sued the government under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), seeking a return of the tank plus damages for personal injuries he said he suffered when the agents roughed him up during the repossession. The district court granted partial summary judgment to the government and later, after a bench trial, ruled for the government on the remaining claims. Smith attacked the district court's decision as "corrupt" and launched this appeal.

Smith is a World War II veteran and member of the Bloomington, Illinois chapter of the VFW. In 1995 he set his sights on getting a World War II tank for the VFW post. The VFW hoped to display the tank in a city park as a memorial to veterans of the Second World War. Smith sent numerous letters on VFW letterhead to various groups, identifying himself as working on behalf of the VFW and asking where he could get a tank. He discovered that WWII-era tanks are scarce, so he accepted the Army's offer to donate a modern tank, one that was used in the Desert Storm phase of the Persian Gulf war. But the Army does not give tanks to just anyone, and so its donation to the VFW was conditional: the VFW had to get written permission from its national headquarters and the post needed a written agreement from the Illinois National Guard to "demilitarize" (render inoperable) the tank. The VFW also had to agree to not transfer the tank without the government's consent.

After Smith obtained the written approvals the Army required, he appeared before the Bloomington city council seeking permission to display the tank in a city park. But the council shot down his request because it did not want a Desert Storm tank as a memorial to WWII veterans. With this turn of events, the VFW decided it no longer wanted the tank.

Undeterred, Smith decided to create his own memorial. He drafted a letter on VFW letterhead allowing him to "seek other appropriate use" for the tank, and got the post commander to sign it. He set aside three acres of his farm where he planned to build the memorial. He then hired a towing company, with his own money, to retrieve the tank from Ft. McCoy, Wisconsin and deliver it to his farm. Rather than have the National Guard demilitarize the tank as the Army required, Smith and a friend tried to do it themselves.

Eventually, the Army discovered that Smith, not the VFW, had the tank. Alarmed by this news, the Army deployed two agents to Smith's farm. The agents found that the tank remained partially operational, and, importantly, was within firing range of the Central Illinois Regional Airport. The agents notified members of the National Guard, who came to Smith's farm and towed the tank. Smith claims that when he objected, the agents restrained him and, at one point, threw him to the ground. The Army subsequently destroyed the tank during target practice.

Smith brought his suit against the government pro se, alleging that it had no right to seize the tank. He sought its return and a modest $23 million in damages for injuries he said he sustained. The district court granted summary judgment to the government on Smith's conversion and replevin claims. After a bench trial on the remaining trespass and battery claims, the district judge found for the government. Smith appeals raising a bevy of issues.

Smith argues first that the trial court should not have granted summary judgment on his conversion and replevin claims because he presented evidence that a nonprofit corporation he created, the McLean County WWII Veterans Memorial, Inc. ("McLean County Memorial"), owned the tank. We review the trial court's decision to grant summary judgment *de novo*. Fed. R. Civ. P. 56(c); *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002). In reviewing these claims, we apply the laws of Illinois, the state where the alleged torts occurred. *Del Raso v. United States*, 244 F.3d 567, 570 (7th Cir. 2001).

We note at the outset that the McLean County Memorial is not a party to this case and Smith may not pursue the claims of a nonparty, so whether or not McLean County Memorial owned the tank is irrelevant to Smith's allegations. *Perry v. Globe Auto Recycling, Inc.*, 227 F.3d 950, 954 (7th Cir. 2000). Therefore, Smith can survive summary judgment only by submitting evidence that *he* owned or had a right to its possession. *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998) (trover and conversion claim requires proof of ownership); *Union Bank of E. St. Louis v. Mattingly*, 576 N.E.2d 941, 942 (Ill. App. Ct. 1991) (replevin claim requires proof of ownership or right to possession). This he did not do. In fact, he admitted that he "does not claim, he himself, had legal title or possession of the tank." Furthermore, the Army conditionally donated the tank to the VFW, not to Smith—in fact, the Army is prohibited from donating a tank to a private citizen. 10 U.S.C. § 2572(a). Finally, the letter Smith drafted purportedly giving him the tank was invalid because the Army prohibited the VFW from transferring the tank to anyone. Therefore, Smith presented no evidence of ownership or right to possession, and the district court properly granted summary judgment to the government.

Next, Smith argues that the district court should not have entered judgment for the government on his trespass and

battery claims because its witnesses were not credible. Smith claims the government's witnesses were not credible because the agents described Smith as cooperative when they removed the tank, while the National Guard members said he was agitated. We review the district court's determinations of credibility for clear error. *United States v. Crowley*, 285 F.3d 553, 563 (7th Cir. 2002). In order to constitute clear error, the district court's findings must be implausible. *Bowles v. Quantum Chem. Co.*, 266 F.3d 622, 630 (7th Cir. 2001).

The district court was entitled to credit the testimony of the agents and National Guard members over Smith's. The court found that the government's witnesses were more credible than Smith because Smith's testimony at trial contradicted his allegation that he ordered the government off his property. As the court noted, Smith not only led the agents to the tank, but he also left them alone with it when he rushed off to a business meeting. Smith's agitation, the court believed, arose from his concern that the tow truck would trample his garden. The court concluded that Smith consented to the government's presence, and that interpretation of the testimony is plausible. Therefore, the court did not err when it entered judgment against Smith on his trespass claim. *Burns Philp Food, Inc. v. Cavalea Cont'l Freight, Inc.*, 135 F.3d 526, 529 (7th Cir. 1998) (under Illinois law, trespass is entry onto land without owner's consent).

The court was also entitled to reject Smith's testimony that the agents assaulted him. Smith claimed that the agents grabbed and restrained him at the farm and even threw him to the ground at the National Guard armory in Bloomington. Yet Smith mentioned neither incident in a lengthy claim for damages he filed with the Army prior to suit. Moreover, the National Guard members testified that they never saw or heard any assault. The court was also skeptical that the agents would tackle Smith after the

tank had been removed from his farm and locked up inside the armory. The court's interpretation of the testimony on this point is also plausible, and therefore we find no clear error.

Smith's remaining arguments also miss their mark. First, Smith claims the Army has "unclean hands" because it destroyed the tank during target practice, and therefore the district court should have found in his favor on all counts. The unclean hands doctrine provides that a party to a lawsuit may not obtain the relief it seeks if it has engaged in wrongful conduct. *Eichmann v. Nat'l Hosp. & Health Care Servs., Inc.*, 719 N.E.2d 1141, 1145 (Ill. App. Ct. 1999). But the government seeks no relief against Smith and therefore the doctrine does not apply.

Second, Smith claims the Army's destruction of the tank constitutes spoliation of evidence, another reason the district court should have found in his favor. Spoliation of evidence occurs when one party destroys evidence relevant to an issue in the case. *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir. 2001). Spoliation of evidence does not apply in this case because the tank itself shed no light on Smith's claims that he owned it, protested its removal, or was assaulted.

Finally, we need not consider Smith's argument regarding the Posse Comitatus Act because he failed to argue the issue to the district court. *Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001). In any event, the Posse Comitatus Act, which prohibits Army and Air Force personnel from engaging in civilian law enforcement, is a criminal statute that provides no private cause of action. 18 U.S.C. § 1385; *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994).

Accordingly, we AFFIRM the judgment of the district court.

No. 01-4000 7

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*