HAMILTON, Circuit Judge,
concurring.
I join the court’s opinion in full. I write separately to emphasize both the importance of the choice-of-law issues in covenant-not-to-compete litigation and the under-appreciated consequences of courts’ willingness in many states to rewrite unreasonable covenants so as to enforce a reasonable but fictional covenant, one that the parties might have made but did not actually make.
At a superficial level, many states adopt the same broad principles in deciding whether and how to enforce an employee’s covenant not to compete with a prior employer. Such contracts are considered to be in restraint of trade but will be enforced if they are reasonable in scope and protect a former employer’s legitimate interests. See generally Norman D. Bish-ara, Fifty Ways to Leave Your Employer: Relative Enforcement of Covenants Not to Compete, Trends, and Implications for Employee Mobility Policy, 13 U. Penn. J. Bus. L. 751, 754 (2011) (“most states will moderately enforce noncompetes using the standard reasonableness test”). But even a gentle tap on that fragile surface of similarity shows important differences from state to state. See generally Brian M. Malsberger, et al., Covenants Not to Compete: A State-by-State Survey (8th ed.2012); Viva R. Moffat, Making Non-Competes Unenforceable, 54 Ariz. L.Rev. 939, 943-52 (2012) (summarizing major variations among states); Gillian Lester & Elizabeth Ryan, Choice of Law and Employee Restrictive Covenants: An American Perspective, 31 Comp. Lab. L. & Pol’y J. 389, 392 (2010) (“states vary widely in their friendliness to employee non-compete agreements”); Cynthia L. Estlund, Between Rights and Contract: Arbitration Agreements and Nom-Compete Covenants as a Hybrid Form of Employment Law, 155 U. Penn. L.Rev. 379, 391-96 (2006) (summarizing variations among states). For a convenient and detailed treatment of the subject state-by-state, see the Mals-berger book cited above.
These wide variations mean that in cases that go to court, a court’s choice of law will often be decisive. See, e.g., Curtis 1000, Inc. v. Suess, 24 F.3d 941, 947-48 (7th Cir.1994) (affirming denial of preliminary injunction; refusing to honor covenant’s selection of governing state law where chosen state had minimal connection to parties’ relationship). The variations also mean that when parties are considering whether to sue, uncertainty about choice of law will be a powerful factor in calculating risks and benefits of litigation, and the eventual choice of forum may well prove to be critical. See David A. Linehan, Due Process Denied: The Forgotten Constitutional Limits on Choice of Law in the Enforcement of Employee Covenants Not to Compete, 2012 Utah L.Rev. 209, 210-11 (2012).
The parties in this case have proceeded on the basis that Ohio law, chosen in the covenants drafted by the Ohio-based employer, controls the covenants. In light of our court’s decision in Curtis 1000, that was a reasonable choice, for in that case we disagreed with a district court’s conclusion that Illinois courts would refuse to enforce a covenant that was enforceable *1018 under another state’s law chosen in the covenant itself, but repugnant to the public policy of Illinois. See 24 F.3d at 948 (disagreeing with Curtis 1000, Inc. v. Suess, 843 F.Supp. 441, 446 (C.D.Ill.1994), on this point, but affirming denial of injunction on other grounds); see also Vencor, Inc. v. Webb, 33 F.3d 840, 844r-4S (7th Cir.1994) (affirming denial of injunction but applying Illinois choice-of-law principles to apply covenant’s choice of Kentucky law). The extent to which state courts would refuse to enforce covenants not to compete on the basis of their own public policy remains a matter of state law, however. We should not discount too quickly the force of that public policy, which gives state courts considerable latitude.
This question is especially pointed where, as in this case, an employer has drafted a broad and unenforceable covenant, but then seeks to take a more moderate position in court, asking a court to enforce the broad covenant only to a “reasonable” extent. The potential for misuse of this approach has long been recognized. See Harlan M. Blake, Employee Covenants Not to Compete, 73 Harv. L.Rev. 625, 682-84 (1960). The basic problem is that if courts are willing to rewrite overly broad covenants for the sake of being reasonable, employers have a powerful incentive to draft oppressive, overly broad covenants. In the many cases that will never get to court, or where employees will be deterred even from trying to leave, the employer benefits from the in terrorem effects of the oppressive and overly broad covenants. Then, in the few cases that go to court, the employer can retreat to a reasonable position without suffering any penalty or disadvantage for its oppressive drafting. This potential abuse may well persuade state courts to refuse to honor parties’ contractual choices of other states’ laws, particularly where the forum state’s public policy is to protect employees from overly broad covenants.
In the Seventh Circuit, for example, Wisconsin has a statute that prohibits enforcement of unreasonable covenants “even as to any part of the covenant or performance that would be a reasonable restraint.” Wis. Stat. § 103.465. On the basis of that statute, Wisconsin courts refuse to honor contractual choices of law that would evade it. See Beilfuss v. Huffy Corp., 274 Wis.2d 500, 685 N.W.2d 373, 377 (Wis.App.2004) (reversing injunction by relying on Wisconsin public policy to refuse to apply Ohio law, which would allow judicial modification of unreasonable covenant and enforcement to reasonable extent); General Medical Corp. v. Kobs, 179 Wis.2d 422, 507 N.W.2d 381 (Wis.App.1993) (relying on Wisconsin public policy to refuse to apply Virginia law, which would allow judicial modification of unreasonable covenant).
Indiana is not quite as strict as Wisconsin about rewriting overbroad covenants, but it enforces a fairly narrow version of the “blue-pencil” doctrine. That doctrine allows a court to strike out specific provisions that are overly broad where the covenant is clearly divisible, but not to add language that might be used to make a covenant enforceable. See Dicen v. New Sesco, Inc., 839 N.E.2d 684, 687 (Ind.2005) (stating general rule and holding that overly broad employment covenant barring competition in entire United States could not be edited to impose reasonable limit); Licocci v. Cardinal Associates, Inc., 445 N.E.2d 556, 562 (Ind.1983) (applying doctrine to enforce severable covenants); Donahue v. Permacel Tape Corp., 234 Ind. 398, 127 N.E.2d 235, 241 (1955) (reversing injunction where geographic limits of covenant were not severable); see generally JAK Productions, Inc. v. Wiza, 986 F.2d 1080, 1087 (7th Cir.1993) (applying Indiana blue-pencil doctrine). One district court has predicted that Indiana courts would invoke that public policy to reject a cove *1019 nant’s choice of another state’s law that would have allowed an employer to enforce an unreasonable covenant to only a reasonable extent. Dearborn v. Everett J. Prescott, Inc., 486 F.Supp.2d 802, 815-20 & n. 5 (S.D.Ind.2007); cf. Zimmer, Inc. v. Sharpe, 651 F.Supp.2d 840, 851-52 (N.D.Ind.2009) (applying Indiana law as not contrary to Louisiana public policy on covenants not to compete).
Illinois law reflects a fairly strong reluctance to salvage unreasonable covenants by judicial modification, though the case law seems to allow a fair amount of room for equitable judgment that can make it difficult for parties to foresee potential modifications in litigation. In House of Vision, Inc. v. Hiyane, 37 Ill.2d 32, 225 N.E.2d 21, 25 (1967), the Illinois Supreme Court reversed an injunction issued after a trial court had modified an overly broad covenant, explaining: “To stake out unrealistic boundaries in time and space, as the employer did in this case, is to impose upon an employee the risk of proceeding at his peril, or the burden of expensive litigation to ascertain the scope of his obligation. While we do not hold that a court of equity may never modify the restraints embodied in a contract of this type and enforce them as modified, the fairness of the restraint initially imposed is a relevant consideration to a court of equity.” Accord, e.g., Pactiv Corp. v. Menasha Corp., 261 F.Supp.2d 1009, 1015-17 (N.D.Ill.2003) (summarizing Illinois law and declining to modify overly broad covenant); Eichmann v. National Hosp. & Health Care Svcs., 308 Ill.App.3d 337, 241 Ill.Dec. 738, 719 N.E.2d 1141, 1149 (1999) (declining to modify overly broad covenant). Thus far, however, we have predicted that Illinois courts would be more willing than courts in Wisconsin or Indiana to allow avoidance of these doctrines of Illinois law through a choice-of-law clause, at least if the choice has a reasonable connection to the contract. See Curtis 1000, 24 F.3d at 948. Whether the Illinois courts will ultimately agree with that prediction remains to be seen. Cf. Cambridge Engineering, Inc. v. Mercury Partners 90 BI, Inc., 378 Ill. App.3d 437, 316 Ill.Dec. 445, 879 N.E.2d 512, 529-30 (2007) (stating that “allowing extensive judicial reformation of blatantly unreasonable posttermination restrictive covenants may be against public policy,” but deciding case on other grounds).